OPINION *Page 2 
{¶ 1} Appellant, Janet Gratzmiller, appeals from a Jefferson County Common Pleas Court judgment ordering her to pay half of her son's college expenses.
 {¶ 2} Appellant and appellee, Dennis Gratzmiller, were married on May 1, 1982. They share two children, Gregory (d.o.b. 11/26/86) and Jeffery (d.o.b. 7/17/88). The parties' marriage was dissolved on September 26, 1995. Attached to their petition for dissolution was the parties' separation agreement. The separation agreement was incorporated into the trial court's decree of dissolution. Per the terms of the agreement, appellant was named as the residential parent of both children. However in 2003, the parties agreed that appellee would be Gregory's residential parent. The separation agreement also provided that the parties would share the cost of the children's college educations at a state university.
 {¶ 3} On July 11, 2006, appellee filed a motion requesting that the court order appellant to pay one half of Gregory's college expenses at Bethany College in West Virginia, or in the alternative, to pay an amount equal to the expenses that Gregory would have incurred at a state university. Appellee asserted that the parties' separation agreement required appellant to make such payments.
 {¶ 4} The court held a hearing on appellee's motion where it heard testimony from both parties. It then sustained appellee's motion and ordered appellant to pay one half of Gregory's college expenses incurred for room, board, tuition, books, and fees. The court ordered that appellant is to pay an amount equal to one half of that which an Ohio state college would charge, less the amount of any grants or financial aid Gregory receives, which he is not obligated to repay. However, the court stated, if the total costs for room, board, tuition, books, and fees at Bethany College are less than the similar charges at the lowest-priced Ohio state college, then appellant is to pay one half of the costs at Bethany. The court further stated that this ruling would also apply to the expenses Jeffery would incur when he enrolled in college.
 {¶ 5} Appellant filed a timely notice of appeal on October 24, 2006.
 {¶ 6} Appellant raises two assignments of error, the first of which states:
 {¶ 7} "THE TRIAL COURT ERRED WHEN IT MODIFIED THE *Page 3 
SEPARATION AGREEMENT INSTEAD OF INTERPRETING IT. A SEPARATION AGREEMENT IS A CONTRACT AND ITS INTERPRETATION IS A MATTER OF LAW. THUS, IT IS SUBJECT TO THE SAME RULES OF CONSTRUCTION AS OTHER CONTRACTS. THE PRIMARY PRINCIPLE, WHICH COURTS MUST FOLLOW IS THAT THE CONTRACT MUST BE INTERPRETED SO AS TO CARRY OUT THE INTENT OF THE PARTIES. PURSUANT TO THIS RULE, IT HAS BEEN HELD THAT WHEN A TERM IN AN AGREEMENT IS UNAMBIGUOUS, THEN THE WORDS MUST BE GIVEN THEIR PLAIN, ORDINARY AND COMMON MEANING; HOWEVER, WHEN THE TERM IS NOT CLEAR, PAROLE (sic) EVIDENCE IS ADMISSIBLE TO EXPLAIN THE MEANING OF THE WORDS."
 {¶ 8} The parties' separation agreement includes the following provision:
 {¶ 9} "17.) That the Husband and Wife shall each be responsible for the payment of one-half (1/2) of the post-high school expenses for the education of the parties' minor children. Said expenses shall be limited to payment for room, board, tuition, books and fees and shall be for a period not to exceed four (4) years during which time, said minor children shall be enrolled as full-time students at a state
institution." (Emphasis added.)
 {¶ 10} Appellant argues that per the unambiguous terms of the separation agreement, she is only required to pay for half of Gregory's college expenses if he enrolls in a state university. Bethany College is a private university. Appellant contends that the trial court was without authority to alter the terms of the separation agreement and require her to pay for college expenses at a private university. Appellant argues that when she and appellee entered into the separation agreement, they intended to limit their financial responsibility for their children's college education to payment for one half of expenses at a state institution. Appellant argues that the trial court impermissibly altered the terms of the parties' agreement by requiring her to contribute towards Gregory's expenses at a private school.
 {¶ 11} On review of a trial court's determination in domestic relations cases, appellate courts generally apply the abuse of discretion standard. Booth v. Booth *Page 4 
(1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. However, because judicial interpretation of contract language is a question of law, appellate courts apply a de novo standard when reviewing the language of a separation agreement. Plymale v. Wolford, 4th Dist. No. 05CA5,2005-Ohio-5224, at ¶ 7.
 {¶ 12} A separation agreement is a contract and is subject to the same rules of construction as other contracts. Polish v. Polish, 7th Dist. No. 99-CA-101, 2001-Ohio-3235. When a clause or term in a separation agreement is ambiguous, it is the trial court's responsibility to interpret it. In re Marriage of Seders (1987), 42 Ohio App.3d 155, 156,536 N.E.2d 1190. The trial court has broad discretion to clarify ambiguous language and may consider the intent of the parties and the equities involved. Musci v. Musci, 9th Dist. No. 23088, 2006-Ohio-5882, at ¶ 42. But when the terms of a separation agreement are clear and unambiguous, the words used must be given their plain and ordinary meaning and a court must give effect to the agreement's expressed terms.Wittstein v. Wittstein, 12th Dist. No. CA2006-03-013, 2006-Ohio-6707, at ¶ 8. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. MedicalLife Ins. Co. (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, at paragraph one of the syllabus.
 {¶ 13} Appellant relies in part on the Eleventh District case ofForstner v. Forstner (1990), 68 Ohio App.3d 367, 588 N.E.2d 285. InForstner, the parties had entered into a separation agreement, which provided in part:
 {¶ 14} "`11. Defendant * * * shall pay the cost for a full four year college education for each of the minor children should they qualify for and desire to attend college. Defendant shall be obligated to provide such education for a period not to extend past the 30th birthday of each child.' (Emphasis added.)" Id. at 367.
 {¶ 15} The mother filed a motion for an order requiring the father to show cause as to why he should not be held in contempt for failing to pay all of the expenses the parties' oldest child had incurred attending college.
 {¶ 16} The court held a hearing on the motion where it was testified to that the parties' son had unilaterally decided to attend Cornell University and that the father *Page 5 
disagreed with this choice, instead believing that the son should attend a public university. The evidence also demonstrated that the cost for attending Cornell for one year was approximately $19,000. The evidence further showed that during the son's first year at Cornell, the father gave him $10,000, although he was financially able to have given the son $19,000. The referee concluded, and the trial court agreed, that the provision in the separation agreement was silent concerning whether there was a limit upon the father's obligation to pay for college. The referee then recommended that the trial court apply a "reasonable standard" and only require the father to pay $10,000. The trial court agreed.
 {¶ 17} The mother appealed arguing that the term "college education" was not ambiguous, and therefore it was unnecessary for the trial court to interpret the provision to only require the father to pay a reasonable amount. The appellate court agreed. It found that the phrase "college education" was unambiguous. Id. at 372. However, it stated that the trial court was not required to define the term in a vacuum. Id. The court stated that the term's interpretation was also dependent upon its context, the surrounding separation agreement, and divorce decree. Id.
 {¶ 18} The court stated that because the matter was a contempt proceeding, the parties presented evidence as to ability to pay in order to make a comparison with the social and economic circumstances demonstrated in the original decree and separation agreement. Id. It noted that ability to pay was a non-issue because it was admitted that the father was a multimillionaire who could afford to pay the entire cost. Id. Additionally, it found that the social and financial circumstances existing at the time of the decree and evident in the decree indicated that attendance at a private college was well within the parties' contemplation at the time of the divorce. Id. Thus, the court stated that the burden was upon the father to specify any limitation in the interpretation of the phrase "college education." Id. The court then concluded:
 {¶ 19} "In the absence of any such express or implied limitation, we determine, as a matter of law, that the term `college education' is unambiguous as it *Page 6 
is used in this particular divorce decree and separation agreement; and, as such, it should be read and interpreted in its broadest sense, subject only to the ability to pay.
 {¶ 20} "We find that, in effect, the referee and later the judge, modified rather than interpreted this particular child support provision. There was no jurisdiction to do so in a contempt action." Id. at 373.
 {¶ 21} The Eighth District also concluded that when parties to a separation agreement include language that one party is to pay for the child's college expenses, unless there is language limiting the type of college the party is required to pay for, that party must pay for the college expenses at either a public or private university. See Rand v.Rand (June 28, 1984), 8th Dist. No. 47712 ("In the instant case, the appellant specifically agreed to pay for his son's college education. No mention is made in the separation agreement as to whether that education must be at a public or private institution. In the absence of any language limiting the appellant's obligation to pay for his son's college education, we conclude that the appellant is required to pay for Jonathon's education at The University of Pennsylvania."), affirmed inRand v. Rand (1985), 18 Ohio St.3d 356, 481 N.E.2d 609.
 {¶ 22} And the Twelfth District has found that when a separation agreement includes a clause requiring a party to pay for a child's college expenses, the child is not limited to attending a school in Ohio absent such limiting language in the separation agreement. Leser v.Johnson (June 10, 1991), 12th Dist. No.CA90-06-038.
 {¶ 23} The Twelfth District has also held that separation agreements must be read literally and the court cannot add additional terms into the contract. Key v. Key (July 3, 2000), 12th Dist. No. CA99-08-020. InKey, the relevant clause in the separation agreement stated: "Husband shall provide the first two (2) years of Shannon's expenses incurred for attending a college or university; said expenses shall include — tuition, room and board, books, and institution charged fees. The child shall be enrolled as a full time student to receive the above funds and shall complete *Page 7 
said two years within three years from the date of her high school graduation." The trial court ordered the father to reimburse payments made for textbooks charged while the daughter was enrolled as a part-time student. The appellate court reversed holding that according to the plain language of the separation agreement, the father was only responsible for his daughter's books when she was enrolled as a full-time student. Id.
 {¶ 24} In the case sub judice, the clause in the separation agreement dealing with the children's college expenses is unambiguous. Unlike the separation agreements in Forstner, Rand, and Leser, in this case the agreement clearly includes language stating the "children shall be enrolled as full-time students at a state institution." (Emphasis added.) Thus, the court should have simply applied the terms' ordinary meaning. The separation agreement plainly contemplated that the children would attend a state university. The trial court was not free to disregard this language. By doing so, the court altered the terms of the separation agreement. Accordingly, appellant's first assignment of error has merit.
 {¶ 25} Given the merit of appellant's first assignment of error, her second assignment of error is rendered moot. It states:
 {¶ 26} "THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING APPELLANT TO PAY `AN AMOUNT EQUAL TO ONE-HALF (1/2) THAT AMOUNT WHICH AN INSTITUTION OF THE STATE OF OHIO WOULD CHARGE, LESS THE AMOUNT OF ANY GRANT(S) OR OTHER FINANCIAL AID RECEIVED BY GREGORY E. GRATZMILLER WHICH HE IS NOT OBLIGATED TO REPAY OR, IN THE ALTERNATIVE, ORDERING APPELLANT TO PAY ONE-HALF (1/2) OF THE COST AT BETHANY COLLEGE IF THE TOTAL COST FOR ROOM, BOARD, TUITION, BOOKS AND FEES AT BETHANY COLLEGE ARE LESS THAN SIMILAR CHARGES AT THE LOWEST-PRICED STATE INSTITUTION IN OHIO." *Page 8 
 {¶ 27} Based on the merit of appellant's first assignment of error, the trial court's judgment is hereby reversed and hereby vacated.
Waite, J., concurs.
 DeGenaro, P.J., concurs. *Page 1